J-S39045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FARNCISCO P. FRANKLIN | : | |
| | : | |
| Appellant | : | No. 3242 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004749-2018

BEFORE:  LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:               **FILED SEPTEMBER 8, 2020**

Farncisco P. Franklin (Franklin) appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (trial court). On appeal, he challenges the discretionary aspects of the trial court's sentence.  After review, we affirm.

**I.**

On June 7, 2019, Franklin entered an open guilty plea to third-degree murder and possessing an instrument of crime.[1]  At the guilty plea hearing, the Commonwealth provided the following underlying facts:

On January 27, 2018, at approximately 10:55 in the evening, police officers from the 22nd Police District and Temple University

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 907(a).

responded to 2034 North Gratz Street in [Philadelphia]. Upon arrival, they observed the decedent, William Elliot, who was 25 at the time, suffering a stab wound to the chest. He was transported to Temple University Hospital but succumbed to his injury. He was pronounced at 11:15 p.m. by Dr. Beard.

A postmortem examination was conducted by Dr. Daniel Brown in the office of the medical examiner. Dr. Brown conducted the autopsy and determined that Mr. Elliot suffered a single stab wound to the chest that penetrated 3 to 4 inches, traveling through his right pectoralis, his right anterior third rib and upper lobe of his lung. The doctor measured more than 2,000 milliliters of blood had entered Mr. Elliot's lung.

Dr. Brown determined that the cause of death was a stab wound to the chest and the manner of death was homicide.

Homicide investigators interviewed a number of witnesses concerning the death of Mr. Elliot. One witness, Tyrik Barnes, indicated that he was at a repass with [Franklin] at the location of 2013 North Gratz Street mourning the loss of a family member. When he went outside, he observed an argument between the white males and [Franklin, who was intoxicated]. The young men had been yelling, "[F---] Tom Brady" and there was a response.

Mr. Barnes broke up the argument and observed the males walk north on Gratz Street with [Franklin] behind them. Mr. Barnes observed [Franklin] and another white male, [Mr. Elliot], face-to-face arguing at the corner. At that point, [Barnes] instructed his girlfriend to leave and he saw [Franklin] run to his minivan and drive off.

Another witness, Alexander Clark, was friends with Mr. Elliot. He indicated that [Mr. Elliot] and [the] group were yelling "[F---] Tom Brady" as they passed a car with a funeral sticker on it[.]

At the time . . . [Franklin] was alone outside when this all took place. Mr. Clark indicated that there was an argument between [Franklin] and the group. [Franklin] and [Mr. Elliot] argued back and forth. Mr. Clark then walked north on Gratz, approximately 20 feet ahead of [Mr. Elliot]. When he turned around at the corner, he noticed that [Franklin] and [Mr. Elliot] were face-to-face and [Franklin] was being extra aggressive. [Franklin] made

a sideways swinging motion and he saw Mr. Elliot grab his chest and fall to the ground.

[Mr. Elliot's] brother was also interviewed. He told detectives that they were walking down Gratz Street. And all of the guys started yelling "[F---] Tom Brady." [Franklin] yelled at them to stop yelling; that his cousin had just died. Then [Mr. Elliot] yelled something in response and an argument ensued.

They continued to walk, and when [Mr. Elliot] was at the corner of Fontain and Gratz Street, [Mr. Elliot's] brother observed [Franklin] and [Mr. Elliot] facing each other. He then saw [Mr. Elliot] grab his chest and fall to the ground.

N.T. 6/7/2019, at 16-20.

At the September 6, 2019 sentencing hearing, the trial court reviewed the presentence investigation report and mental health examination, both of which the trial court ordered after accepting the plea. In particular, the trial court reviewed Franklin's criminal history, noting that he was a five on the prior record score scale and had been convicted of multiple firearms offenses that resulted in county sentences followed by multiple violations of probation and parole. Franklin was sentenced to state prison for his most recent conviction and was on state parole at the time of his current offense. Besides his criminal history, the trial court also reviewed Franklin's personal history, observing that he had lost both of his parents at a young age and was raised by his grandmother. Franklin began to struggle with substance abuse beginning at age 15 and had continued to do so through the years. According to the mental health examination, Franklin had an alcohol and mixed substance abuse disorder, but no mental diagnosis.

- 3 -

The trial court then heard from multiple family members and friends of the victim, as well as viewing video surveillance of the offense. Likewise, Franklin presented a number of witnesses to speak on his behalf and speak to the effect that his upbringing had on him, including his struggles with substance abuse. Franklin also presented 35 character letters of support and a report prepared by a mitigation specialist. Finally, Franklin exercised his right to allocution, expressing his remorse for stabbing and killing the victim.

After hearing from both sides, the trial court imposed a sentence of 20 to 40 years' imprisonment for third-degree murder and no further penalty for possessing an instrument of crime. Despite finding Franklin's remorse sincere, the trial court provided the following explanation for its sentence:

> You have had opportunity after opportunity after opportunity to change. The system, as imperfect as it was and is and will continue to be, has attempted to offer you assistance and guidance in every step, first as a juvenile, then in a specific program to give you or to meet your needs as a young man.
>
> You almost closed your allocution with a thought about how a 17-year-old cannot make a mistake that a 37-year-old man does, but a 37-year-old man can make a mistake that a 17-year-old man does.
>
> My sentence, so it's clear, would be different if you were 17 or 18 or 21 or 25, but you were 34, 34 at this time.
>
> I look out in this courtroom, and while you have had loss in your life, I see support, I see love, and I see people who are in this courtroom not just today on your behalf, but who have been there for you, so unlike many other defendants that I see in this courtroom. You have loved and you have been loved in spite of your losses.

I looked at that video. I wanted to see that video because too often -- not too often, but most of the time I see cases through different color lenses. And by that I mean I have an eyewitness who views it one way, a loved one of the decedent, in this case Billy's family or friends who would see the incident differently. I may sometimes hear from a defendant's family, and I could have heard, if this had gone to trial, from someone that was a loved one of you from their lens. But in this case, the camera doesn't lie. And what the camera showed me is, yes, you were emotional, but what also the camera showed me is you were already armed. You didn't go in the house and get a knife. You were already armed. And I saw you take that out and I saw you hide that, and I saw someone try to stop you, and I also saw no reason, no justification for what you did.

You may not think that I'm giving you mitigation, but I am.

N.T., 9/16/19, at 151-52.

Franklin filed a post-sentence motion for reconsideration in light of the substantial mitigating factors presented at sentencing. These included: (1) Franklin's acceptance of responsibility by pleading guilty; (2) his mental state at the time of the offense; (3) his background; (4) his positive progress after being released from state prison in 2015; (5) his positive impact on others; and (6) his remorse. On October 8, 2019, the trial court held a hearing on the motion and, after hearing from counsel on the mitigation evidence, reduced Franklin's sentence to 19 to 40 years' imprisonment. Franklin timely appealed and now argues that the trial court gave an unduly harsh sentence by failing to adequately consider his substantial mitigating evidence.

## II.

Franklin's sole issue challenges the discretionary aspects of sentence. "The right to appellate review of the discretionary aspects of a sentence is not

- 5 -

absolute, and must be considered a petition for permission to appeal."

***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014).

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [see Pa.R.A.P. 2119(f) ]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Giordano***, 121 A.3d 998, 1007-08 (Pa. Super. 2015),

*appeal denied*, 131 A.3d 490 (Pa. 2016) (citation omitted; brackets in

original).

Franklin filed a timely appeal and preserved his issue in a timely post-sentence motion. He has also included a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Further, Franklin contends that the trial court imposed an excessive sentence and erred by not adequately considering his mitigating factors. "[T]his Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating

factors—raises a substantial question." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014). Thus, we consider the merits of his claim.[2]

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

"A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Rush***, 162 A.3d 530, 544 (Pa. Super. 2017) (citation omitted). Further, where there is a pre-sentence investigation, "we shall ... presume that the sentencing judge was aware of relevant information

---

[2] "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015) (quotation omitted).

regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Conte**, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted).

Additionally, Franklin was sentenced within the guidelines.[3] Where a sentence is imposed within the guidelines, we may only reverse the trial court if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). Our review of the reasonableness is based upon the factors contained in 42 Pa.C.S. § 9781(d) and the trial court's consideration of the general sentencing standards contained in 42 Pa.C.S. § 9721(b).[4] **Commonwealth v. Baker**, 72 A.3d 652, 663 (Pa. Super. 2013). However, "[w]e cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009) (citation omitted).

---

[3] Because he was a five on the prior record score scale, and third-degree murder has an offense gravity score of 14, Franklin's standard range guidelines, with the deadly weapon used enhancement applied, were 210 months to the statutory limit. **See** 204 Pa. Code. § 303.17(b) (Deadly Weapon Enhancement/Used Matrix).

[4] In imposing it sentence, "the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

Franklin believes the trial court failed to adequately consider his rehabilitative needs, resulting in an excessive sentence that did not properly account for his genuine remorse and substance abuse problems. Franklin's Brief at 12-13. This argument, however, is belied by the record. At sentencing, the trial court spent considerable time in reviewing Franklin's presentence investigation and mental health examination, making sure to confirm that it had his full background. As quoted above, the trial court acknowledged and credited all of Franklin's mitigating evidence, including the support of his character witnesses who appeared at his sentencing.

This support, however, did not require the trial court to ignore the gravity of the offense. Franklin was armed with a knife and got into a heated argument with a group of strangers. Then, after the argument abated and the victim walked away, Franklin pursued and stabbed the victim without any apparent justification. Franklin, who was on state parole, then fled the scene and was not arrested until several months later.

Additionally, as the trial court noted, Franklin has a substantial criminal record, amassing enough convictions to place him as a five on the prior record score scale. As summarized in the presentence investigation, Franklin was given multiple opportunities on county supervision before finally being sentenced to state prison. Based on this history, the trial court simply concluded that Franklin had a low potential for rehabilitation, especially since his most recent offense involved the homicide of a stranger while he was still

on state parole. Accordingly, based on our review of the record, it is clear that the trial court did not abuse it discretion in imposing a sentence of 19 to 40 years' imprisonment for third-degree homicide.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/08/2020